U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 16, 2005                                  United States Bankruptcy Judge

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RONALD EUGENE RILEY and | § | |
| TERI LYNN RILEY, | § | |
| | § | |
| Debtors. | § | CASE NO. 03-49442-DML-7 |

| | | |
|---|---|---|
| AMERICAN AIRLINES FEDERAL | § | |
| CREDIT UNION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| RONALD EUGENE RILEY, | § | |
| | § | |
| Defendant. | § | ADV. NO. 04-4056-DML |

**MEMORANDUM OPINION**

Before the court is Ronald Eugene Riley's ("Defendant") Motion for Relief from Summary Judgment Order (the "Motion") filed October 6, 2004. American Airlines Federal Credit Union's ("Plaintiff") Response to Defendant's Motion was filed October 13, 2004. A hearing on the Motion was held March 3, 2005. At the request of the parties on motion for judgment on the pleadings,[1] the court took the matter under advisement. Having considered the

---

[1] *See* FED. R. BANKR. P. 7012(c) (2005).

1

pleadings and supporting documents before it, the court finds and concludes that Defendant's Motion should be, and hereby is, **DENIED**.

## BACKGROUND

On October 15, 2003, Defendant and his wife filed for chapter 7 relief under the Bankruptcy Code then in effect.[2] On February 12, 2004, Plaintiff filed its Complaint to Determine Dischargeability of a Debt (the "Complaint") against Defendant. Plaintiff's Complaint alleged that Defendant's indebtedness to Plaintiff was not dischargeable under Code section 523(a)(8)[3] and, therefore, Plaintiff's claims against Defendant, in whole or in part, must be excepted from discharge. Defendant's Response [sic] in Opposition to Complaint filed February 24, 2005, generally denied Plaintiff's allegations and asked this court to deny all relief sought by Plaintiff in the Complaint.

Plaintiff's Motion for Summary Judgment and Supporting Brief (the "MSJ") was filed on August 25, 2004. Plaintiff's MSJ argued, *inter alia*, that (1) Plaintiff is a federal credit union

---

[2] 11 U.S.C. §§ 101-1330 (2005) (hereafter the "Code").

[3] (a) A discharge under . . . this title does not discharge an individual debtor from any debt–

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Code § 523(a)(8).

chartered under the Federal Credit Union Act ("FCUA")[4]; (2) Plaintiff is a nonprofit institution; (3) the note upon which Plaintiff seeks to recover from Defendant represents Plaintiff's payoff of an educational loan made by the Texas Guaranteed Student Loan Corporation ("TGSLC") to Defendant; (4) the educational loan made to Defendant was made under a program funded in whole by Plaintiff; (5) the note represents funds received by Defendant as an educational benefit, scholarship, or stipend; and (6) excepting the debt from Defendant's discharge would not impose an undue hardship on Defendant and Defendant's dependents. Thus, Plaintiff argues it has met its burden of proof under Code section 523(a)(8),[5] and Defendant's indebtedness to Plaintiff is nondischargeable.

Defendant's Response in Opposition to Plaintiff's MSJ (the "Response") contends that (1) Plaintiff does not qualify as a "government unit" as defined by Code section 101(27)[6]; (2) the Code does not define "nonprofit institution" for purposes of determining whether a student loan is excepted from discharge; (3) prevailing caselaw indicates that courts should narrowly construe

---

[4] 12 U.S.C. §§ 1751-1790d (2005).

[5] Under section 523(a)(8) the creditor is required to establish by a preponderance of the evidence that his claim is not dischargeable. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (holding that a creditor is not required under section 523 to meet a heightened clear and convincing burden of proof; a preponderance of the evidence standard is sufficient to fairly balance a debtor's interest in a "fresh start" and a creditor's interest in the nondischargeability of educational loans). *See also In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (explaining that creditor had the burden to prove by a preponderance of the evidence that the debt met one of the statutory exceptions to discharge).

[6] (27) "governmental unit" means . . . department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title) . . . .

Code § 101(27).

exceptions to discharge against creditors and in favor of debtors[7]; and (4) although Plaintiff's loan to Defendant "may have had some tangential educational relationship," Plaintiff's loan to Defendant was not for an educational purpose or benefit as required by Code section 523(a)(8) for eligibility as a nondischargeable debt.

Defendant's Affidavit in Support of the Response to the MSJ (the "Affidavit') acknowledged that (1) Defendant obtained an educational loan to attend school; (2) TGSLC purchased the loan; (3) the TGSLC loan was in default; (4) Plaintiff made to Defendant a loan at a lower interest rate so that Defendant could pay off the TGSLC loan; (5) Plaintiff issued a check made payable to Defendant and the TGSLC; (6) Defendant endorsed the check; and (7) Plaintiff remitted the proceeds to the TGSLC. Defendant, however, denied having any knowledge that Plaintiff's loan to Defendant was part of any program Plaintiff participated in for payment of student loans.

A hearing on Plaintiff's MSJ was held on October 4, 2004. Defendant failed to appear; and the court orally granted Plaintiff's MSJ. On October 12, 2004, the court entered its Judgment Excepting Debt from Discharge ("Judgment").[8]

---

[7] *See McClure v. Action Career Training (In re McClure)*, 210 B.R. 985, 988 (Bankr. N.D. Tex. 1997) ("[T]he court must narrowly construe exceptions to dischargeability of debts against the creditor and in favor of the debtor.") (citations omitted).

[8] The Judgment provided:

> AT THE HEARING on Plaintiff's Motion for Summary Judgment filed herein, came the Plaintiff, AMERICAN AIRLINES FEDERAL CREDIT UNION, by and through its attorney of record, and the Defendant RONALD RILEY, though properly notified, failed to appear. The Court, having heard the argument of counsel, and having reviewed the pleadings on file, Plaintiff's Motion, and the Affidavits filed in support thereof, is of the opinion that there is no genuine issue about any material fact, that the Plaintiff's Motion should be granted and that Plaintiff is entitled to Judgment as a matter of law. The Court finds that the debt owed to Plaintiff should be excepted from discharge

In the meantime (and unknown to the court), Defendant's Motion was filed on October 6, 2004. Defendant explained that his failure to appear at the October 4, 2004, hearing on the MSJ was inadvertent due to a scheduling error. Defendant's Motion prayed for relief from the court's oral grant of Plaintiff's MSJ and asked that a new hearing on the merits of the MSJ be scheduled. Defendant's Proposed Findings of Fact and Conclusions of Law were filed October 7, 2004.

On October 13, 2005, Plaintiff's Response to Defendant's Motion was filed. Plaintiff argued that based on Defendant's responsive pleadings to Plaintiff's MSJ, no fact issues remained to be determined at the MSJ hearing which was held on October 4, 2004, regardless of Defendant's attendance or failure to attend. Rather, Plaintiff contended that this court had as a matter of law correctly decided the remaining legal issues between the parties and that

---

and that Defendant RONALD RILEY, is liable to Plaintiff, AMERICAN AIRLINES FEDERAL CREDIT UNION, in the sum of $15,843.48, plus attorney's fees in the amount of $2,500.00, with post judgment interest at the rate of 8.75% per annum from the date of this Judgment until paid, and it is therefore,

ORDERED, ADJUDGED AND DECREED, that the sum of $15,843.48, plus attorney's fees in the amount of $2,500.00, with post judgment interest at the rate of 8.75% per annum from the date of judgment, owed to AMERICAN AIRLINES FEDERAL CREDIT UNION be, and the same is hereby excepted, from the Defendant/Debtor's discharge.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, AMERICAN AIRLINES FEDERAL CREDIT UNION, is awarded Judgment in the sum of $15,843.48, plus attorney's fees in the amount of $2,500.00, with post judgment interest on these sums at the rate of 8.75% per annum from the date of judgment, against Defendant/Debtor, RONALD RILEY.

IT IS THEREFORE ORDERED that Plaintiff shall have all writs of execution and other process necessary to enforce this Judgment.

This Judgment finally disposes of all parties and all claims and is appealable. All other relief requested but not specifically granted herein is denied.

Defendant's Motion provided no basis for either (1) setting aside the order granting the MSJ or (2) vacating the Judgment entered thereon. Defendant filed no reply.

A hearing on Defendant's Motion was held March 3, 2005. On motion for judgment on the pleadings[9] made by the parties at the hearing, the court took the matter under advisement.

---

[9] *See supra* note 1.

**DISCUSSION**

Code section 523(a)(8) excepts from discharge an "educational . . . loan made . . . under any program funded in whole or in part by a governmental unit or nonprofit institution."[10] The well established purpose of Code section 523(a)(8) is to serve "the strong public policy . . . to secure repayment of student loans to insure that funds continue to be available to help future students." *Shaffer v. United Student Aid Funds, Inc. (In re Shaffer)*, 237 B.R. 617, 620 (Bankr. N.D. Tex. 1999). *See also In re McClure*, 210 B.R. at 987 (explaining that "by enacting § 523(a)(8), Congress sought principally to protect . . . organizations which lend money or guarantee loans to individuals for educational purposes . . . from bankruptcy discharge"); 4 COLLIER ON BANKRUPTCY ¶ 523.14[1] (15th. ed. rev. 2004) (explaining that courts have focused on "safeguarding the financial integrity of governmental entities and nonprofit institutions that participate in educational loan programs").

Plaintiff does not dispute Defendant's contentions that (1) Plaintiff is not a "governmental unit" as defined by the Code[11]; (2) "nonprofit institution" is not defined in the Code; (3) prevailing caselaw indicates that courts should narrowly construe exceptions to discharge against creditors and in favor of debtors[12]; or (4) the scope of section 523 has not been extended to include

---

[10] Code § 523(a)(8).

[11] *But see T I Credit Union v. Delbonis*, 72 F3d 921, 937 (1st Cir. 1995) ("We are convinced that treating federal credit unions as 'government instrumentalities' and, thus, 'government units,' is consistent with Section 523(a)(8)'s discharge-limiting purpose. 'By enacting Section 523(a)(8), Congress sought principally to protect government entities and nonprofits – places which lend money or guarantee loans to individuals for educational purposes – from bankruptcy discharge.' Including federal credit unions within the universe of entities regarded as government units under Section 523(a)(8), in accord with this purpose, reduces opportunities for dischargeability and minimizes opportunities for fraud.").

[12] *See supra* note 7.

educational benefits provided by for-profit businesses.[13] Rather, Plaintiff contends its low-interest-rate loan to Defendant was made under a student education loan program funded in whole by Plaintiff, a nonprofit federal credit union, to restructure Defendant's TGSLC loans at a more favorable interest rate to Defendant, and, therefore, Plaintiff's loan to Defendant is subject to the provisions of section 523(a)(8) and is excepted from discharge.

First, the MSJ record before the court includes Plaintiff's uncontroverted "Organization Certificate" certifying Plaintiff's status as a nonprofit organization in accordance with the FCUA[14] and Plaintiff's "Letter of Exemption" certifying Plaintiff's exemption from taxes under section 1768 of the FCUA as a not-for-profit financial cooperative.[15]

Second, Plaintiff's Affidavit in Support of Plaintiff's MSJ attests that

> . . . [T]he check which was issued by Plaintiff [was] pursuant to [Plaintiff's] educational loan program to pay[]off the Defendant's educational loan with the [TGSLC]. The loan used to pay off the loan to the [TGSLC] was never combined with any other indebtedness. All payments received for the educational loan were applied only to the [Defendant's] educational loan. . . . Plaintiff requires the loan document itself to state that the purpose of the loan is for education. . . . In Defendant's case, each statement identified the loan as: "Suffix 80 Education Loan." . . . [I]n instances of . . . payoff/refinance, the loans [sic] proceeds are distributed directly to the original holder of the student loans or as with Defendant, a check is issued payable to both the holder of the loans and [Defendant].

---

[13] *See In re McClure*, 210 B.R. at 988 (refusing to expand the reach of section 523(a)(8) to for-profit businesses).

[14] ". . . credit unions are not-for-profit cooperatives . . . ." FCUA § 1790d(b)(1)(B).

[15] Section 1768 provides that "Federal credit unions organized hereunder . . . shall be exempt from all taxation . . . ." FCUA § 1768. *See also* Credit Union Membership Access Act [FCUA], Congressional Findings, P.L. 105-219, § 2, 112 Stat. 913 (Aug. 7, 1998) ("Credit unions . . . are exempt from Federal and most State taxes because they are . . . not-for-profit organizations.")

Third, Plaintiff's "LoanLiner Disbursement Receipt," executed by Defendant as Borrower on June 29, 1999, specified the following information:

>     BORROWER 1 NAME:  RONALD E. RILEY
>     ACCOUNT NUMBER:  444844436-80
>     DATE:  06/29/1999
>     PURPOSE:  EDUCATION LOAN.

Fourth, Plaintiff's check No. 917087809, dated June 29, 1999, in the amount of $22,000.00, made payable to "RONALD RILEY & TEXAS GUARANTEED STUDENT LOAN CORP.," was endorsed on the reverse side by Defendant and deposited on July 1, 1999, into the "TGSLC COLLECTIONS ACCT."

Fifth, Defendant admits in Defendant's First Amended Response to Plaintiff's Requests for Admissions (the "Admissions") that (1) when Defendant applied for the loan with Plaintiff, Defendant was informed by Plaintiff that the loan would be used to pay off Defendant's education loan with TGSLC; (2) the loan documents identified the purpose of the loan as an "education loan"; (3) the proceeds of the loan were issued by Plaintiff in the form of a check in the amount of $22,000.00 made payable to Defendant and the TGSLC; (4) the $22,000.00 check did, in fact, pay off Defendant's TGSLC education loan; and (5) Defendant received a letter from TGSLC acknowledging that Defendant's education loan had been paid off

Therefore, the issues remaining before the court are (1) whether Plaintiff is a "nonprofit institution" and (2) whether the loan made by Plaintiff to Defendant was an "educational loan."

**I.  Nonprofit Institution**

Code section 523(a)(8) requires that Defendant's loan be "funded in whole or in part by a . . . nonprofit institution." Code § 523(a)(8). Here, Defendant argues that the Code "does not provide a ready definition of a 'nonprofit institution' for purposes of determining whether a student loan is excepted from discharge." While the court agrees that Defendant's statement is correct, the record before the court includes Plaintiff's uncontroverted "Organization Certificate" certifying Plaintiff's status as a nonprofit organization in accordance with the FCUA, as well as Plaintiff's uncontroverted "Letter of Exemption" certifying Plaintiff's exemption from taxes under section 1768 of the FCUA as a not-for-profit financial cooperative. Defendant neither disputes that the loan was funded in whole by Plaintiff nor offers any evidence to rebut Plaintiff's documentary evidence certifying Plaintiff's status as a nonprofit institution. Accordingly, this court finds that Plaintiff is a nonprofit institution as contemplated by section 523(a)(8) and that Plaintiff's loan to Defendant was wholly funded by Plaintiff.

**II.  Educational Loan**

Code section 523(a)(8) also provides that the funds be "for an educational benefit or loan made . . . under any program funded in whole or in part . . . by a nonprofit institution." *Id.* Defendant denies having knowledge that Plaintiff's loan was part of a program Plaintiff participated in for payment of student loans and disputes that the loan at issue was an educational loan. Plaintiff, however, argues that because Defendant's original TGSLC student loans were merely restructured under Plaintiff's educational loan program to pay off the original TGSLC loans at a reduced interest rate more favorable to Defendant, Defendant's lower-interest-rate loan

is itself an "educational loan" subject to the discharge exceptions of section 523(a)(8). The court agrees.

This court's conclusion is supported by *In re Shaffer*, wherein the Court held that student loan debt which is restructured through the process of consolidation is nevertheless an educational loan embraced by the provisions of section 523(a)(8). *See In re Shaffer*, 237 B.R. at 621 (noting that the majority of courts have recognized consolidation loans as educational loans which are nondischargeable) (citations omitted). Here, Defendant acknowledged in his Admissions that when he applied for the loan Defendant "informed [Plaintiff] that the loan would be used to pay off [Defendant's] education loan with TGSLC."[16] *See id*. at 619 (quoting debtor's representations to the consolidating lender, Sallie Mae, that "[b]y means of this application, I am applying to have my loans consolidated"). Also analogous to *In re Shaffer*, Defendant restructured the TGSLC loans with Plaintiff to obtain a lower interest rate through Plaintiff's educational loan program. *Id*. at 618 ("None of the money borrowed from Sallie Mae was paid over to an educational institution[] but was used solely to restructure outstanding debt on the Debtor's original students [sic] loans from Dallas Teachers Credit Union in order for Debtor to receive more favorable payment options.").

Nor did the Court in *In re Schaffer,* when making its determination of nondischargeability as to the restructured loan, take issue with the fact that the consolidating lender was different from the original lender. *Id*. at 618-19 (discussing that (1) the original student loan was made by the Dallas Teachers Credit Union, but the consolidating lender was "Sallie Mae,"; (2) "[t]hrough a

---

[16] The court thus finds not credible Defendant's claim in his Affidavit that "I was not informed that the loan was part of any program for student loans."

series of assignments," the loan was eventually held by the defendant in the case; and (3) even though the funds of the restructured loan were not paid over to an educational institution to finance the debtor's education, the loan was nevertheless an educational loan within the meaning of section 523(a)(8), because the restructured loan was, in effect, a second student loan). *See also Cobb v. United Student Aid Funds, Inc. (In re Cobb)*, 196 B.R. 34, 36 (Bankr. E.D. Va. 1996) (finding nondischargeable a consolidation loan involving "an entirely new lender" and "not a continuation of the original loan, but rather a completely new loan"). The court sees little, if any, dispositive difference between *In re Shaffer's* restructuring of debtor's educational loans through consolidation and Defendant's restructuring of his TGSLC loan through refinancing by a nonprofit federal credit union.

The court also finds persuasive the holding by the Fifth Circuit in *Murphy v. Pennsylvania Higher Education Assistance Agency* that "it is the *purpose*, not the use, of the loan that controls." *Murphy v. Penn. Higher Educ. Assistance Agency (In re Murphy)*, 282 F.3d 868, 870 (5th Cir. 2002) (emphasis added). The Fifth Circuit in *In re Murphy* made no distinction between the debtor's expenditure of loan proceeds used for the payment of debts directly related to educational items, such as tuition and books, and the debtor's expenditure of loan proceeds on noneducational items and services, such as the payment of debts in connection with room and board and living expenses. *Id*. The Fifth Circuit concluded that loans which facilitate an education and meet expenses incidental to obtaining an education are "educational loans" and consequently nondischargeable. *Id.* at 871.

Here, Defendant restructured his original TGSLC student loan debt with a lower-interest-rate loan from Plaintiff's federal credit union student loan program for the stated "PURPOSE:

12

EDUCATION LOAN." Further, Defendant's "LoanLiner Disbursement Receipt" signed by Defendant as Borrower on June 29, 1999, specifically states: "PURPOSE: EDUCATION LOAN." Finally, Defendant acknowledged that he received Plaintiff's check for repayment of the TGSLC education loan, that he endorsed the check for deposit by TGSLC, and that he received a letter confirming that Defendant's TGSLC educational loan had, in fact, been paid off.[17] Defendant has repeatedly acknowledged – and Plaintiff's supporting MSJ documents adequately demonstrate – the educational purpose of Plaintiff's loan. The court is convinced that the restructured lower-interest-rate loan which Defendant received from Plaintiff to pay off the original TGSLC loan is an educational loan subject to the nondischargeability exceptions of Code section 523(a)(8).

The court is also supported by the well-established public policy behind section 523(a)(8)'s educational loan exemption from discharge, *viz.*:

> It would be inequitable to allow the debtor to do away with the troublesome features of the original loans and accept the benefits of consolidation [restructuring]. . . . Avoiding the 11 U.S.C. § 523(a)(8) exception to dischargeability by simply consolidating [restructuring] the loans conflicts with the legislative intent behind this discharge exception. . . . This could not possibly be the intent of Congress, as reflected in the plain words of the statute.

*In re Shaffer*, 237 B.R. at 620 (citation omitted). *See also In re Murphy*, 282 F.3d at 873 ("Courts have emphasized two purposes when analyzing § 523(a)(8): (1) preventing undeserving debtors from abusing educational loan programs . . . and (2) preserving the financial integrity of the loan system."); *Santa Fe Med. Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342, 348 (3d Cir. 1995) ("[T]he legislative history of section 523(a)(8) teaches that the exclusion of educational

---

[17] *See supra* note 16.

loans from the discharge provisions was designed to remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy . . . and to safeguard the financial integrity of educational loan programs.").

Indeed, the legislative history of section 523(a)(8) evidences the evolving expansion of the Code's scope regarding limitations on dischargeability of educational loans. *Id*. at 619-20. *See also Grogan*, 498 U.S. at 286 ("Congress [in amending the Code] evidently concluded that the creditors' interest in recovering full payment of [educational loan] debts . . . outweighed the debtors' interest in a complete fresh start."); *In re Murphy,* 282 F.3d at 871 (noting that the 1990 amendments to the Code expanded the scope of section 523(a)(8)); (*In re McClure,* 210 B.R. at 986-87 (reviewing extensively the legislative history of section 523(a)(8) and Congress's "broadening of the statute" to fulfill its intent to maintain the integrity of educational loan programs); *In re Cobb*, 196 B.R. at 37 (explaining that Congress's extension of the time period under section 523(a)(8) reflects the clear public policy weighing heavily in favor of the repayment of student loans).

The court is therefore persuaded based on the policy considerations behind the exemption provisions of section 523(a)(8) that it would be inequitable to allow Defendant to avail himself of section 523(a)(8)'s discharge exceptions and avoid the troublesome nondischargeability feature of the original TGSLC loans merely by restructuring the TGSLC loans with Plaintiff. *In re Shaffer*, 237 B.R. at 620 (citing *In re Cobb*, 196 B.R. at 37). Accordingly, as contemplated by section 523(a)(8), the court finds that Plaintiff's $22,000.00 lower-interest-rate loan to Defendant is an educational loan not subject to discharge.

Defendant does not argue, nor shall this court address, that "excepting such debt from discharge under this [section 523(a)(8)] will impose an undue hardship on the debtor and the debtor's dependents."

**CONCLUSION**

Consistent with the foregoing, the court finds that Plaintiff has satisfied its burden of proof and holds that (1) Defendant's Motion should be, and hereby is, **DENIED**; (2) Defendant's educational loan debt to Plaintiff shall be excepted from discharge; and (3) the Judgment[18] entered by this court on October 12, 2004, shall remain in full force and effect.

**SO ORDERED** this _____ day of June 2005.

_____
DENNIS MICHAEL LYNN
UNITED STATES BANKRUPTCY JUDGE

---

[18] *See supra* note 8.